IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CRUISE LINES INTERNATIONAL )
ASSOCIATION ALASKA, et al., )
 )
                          Plaintiffs, )
 )
  vs. )
 )
THE CITY AND BOROUGH OF JUNEAU, )
ALASKA, et al., )
 )  No. 1:16-cv-0008-HRH
                        Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiffs' amended complaint.[1] This motion is opposed[2] and plaintiffs move for the court to take judicial notice of four exhibits attached to their opposition.[3] Oral argument was requested and has been heard on the motion to dismiss.

---

[1]Docket No. 18.

[2]Docket No. 23.

[3]Docket No. 24.

-1-

Background

Plaintiffs are Cruise Lines International Association Alaska and Cruise Lines International Association. Cruise Lines International Association Alaska is a "not-for-profit association" of twelve cruise lines which works "to build positive relationships with communities and government agencies in Alaska, to develop strong partnerships with communities and businesses in Alaska, and to protect its members' legal interests."[4] The twelve cruise lines are also members of Cruise Lines International Association, which is a "not-for-profit organization ... that helps its members succeed by advocating for the common interests of the cruise community and protecting its members' legal interests in the jurisdictions where they operate."[5]

Defendants are the City and Borough of Juneau, Alaska and Rorie Watt, in his official capacity as the City Manager. Juneau "is a duly authorized Alaska Municipality...."[6]

Plaintiffs allege that Juneau imposes two "entry fees" on cruise ship passengers: 1) a $5.00 Marine Passenger Fee and 2) a $3.00 Port Development Fee.[7] Plaintiffs allege that

---

[4]First Amended Complaint [etc.] at 3, ¶ 4, Docket No. 28.

[5]Id. at ¶ 5.

[6]Id. at ¶ 6.

[7]Id. at 5, ¶¶ 16-17.

the Marine Passenger Fee was established by a voter initiative and then adopted by the Municipality to codify the terms and to provide for the administration and collection of the fee.[8] The Ordinance provides that "the purpose of the fee [is] to address the costs to the City and Borough for services and infrastructure rendered to cruise ships and cruise ship passengers visiting the City and Borough." CBJ Code 69.20.005.[9] The Ordinance further provides that "[t]he fees ... shall be placed in the marine passenger fund" and that "[t]he proceeds of the fund shall be appropriated in support of the marine passenger ship industry...." CBJ Code 69.20.120.[10]

Plaintiffs allege that the Port Development Fee was established by a municipal resolution.[11] The resolution provides that the "[p]roceeds of the fee shall be placed in the

---

[8]Id. at ¶ 16.

[9]Exhibit 1 at 1, Opposition to Defendants' Motion to Dismiss Complaint, Docket No. 23. "Although defendant[s] ha[ve] mounted a facial attack on jurisdiction, the court can consider documents that are proper subjects of judicial notice in deciding the motion." PNC Equipment Finance, LLC v. California Fairs Financing Auth., Case No. 11-06248 MMM (DTBx), 2012 WL 12506870, at *6 n.29 (C.D. Cal. Feb. 9, 2012). Plaintiffs move for the court to take judicial notice of Exhibit 1. "Under [FRE] Rule 201, municipal ordinances are proper subjects of judicial notice because they are not subject to reasonable dispute." Calop Business Systems, Inc. v. City of Los Angeles, 984 F. Supp. 2d 981, 992 (C.D. Cal. 2013).

[10]Exhibit 1 at 6, Opposition to Defendants' Motion to Dismiss Complaint, Docket No. 23.

[11]First Amended Complaint [etc.] at 5, ¶ 17, Docket No. 28.

Port Development Fund."¹² The resolution further provides that "[i]t is the intent of the Assembly that the proceeds of the [Port Development] Fund shall be used for capital improvements to the downtown waterfront for the provision of service[s] to the cruise ship industry."¹³

Plaintiffs allege that "[t]he Entry Fees discriminate against cruise travel over other modes of transportation"¹⁴ and that "[t]he Entry Fees discriminate against large cruise ships."¹⁵ Plaintiffs also allege that "[r]evenues generated by the Entry Fees bear no reasonable relationship to the actual costs incurred by [Juneau] to provide services to the cruise vessels and the passengers paying the fees."¹⁶ Plaintiffs allege that Juneau "has spent the proceeds from the Entry Fees, or significant portions thereof, on activities that are unrelated to and/or have not provided any benefits to passengers and vessels."¹⁷ By way of example, plaintiffs allege that Juneau has allocated $10 million "to build a man-made

---

¹²Resolution of the City and Borough of Juneau, Alaska Serial No. 2552 at Section 1(c)(3), Exhibit 2 at 2, Opposition to Defendants' Motion to Dismiss Complaint, Docket No. 23. Plaintiff moves for the court to take judicial notice of Exhibit 2. The court may take judicial notice of this resolution for the same reason it took judicial notice of the Ordinance in Exhibit 1. See footnote 9.

¹³Id. at Section 1(c)(4).

¹⁴First Amended Complaint [etc.] at 6, ¶ 23, Docket No. 28.

¹⁵Id. at 7, ¶ 24.

¹⁶Id. at ¶ 25.

¹⁷Id. at ¶ 26.

recreational island, elevated walkways, and infrastructure to support a whale statute located nearly a mile away from the cruise ship docks."[18] Plaintiffs further allege that Juneau "has ... applied proceeds from the Entry Fees to a variety of other projects and expenses that provide general benefits to the community, but do not recoup costs incurred by [Juneau] in providing services to vessels and passengers."[19] By way of example, plaintiffs allege that Juneau

> has appropriated Entry Fees during the period of Fiscal Year 2001 to Fiscal Year 2016 for the following:
>
> (a)  $22 million to fund ... general government operating expenses;
>
> (b)  $11 million to fund projects within the [Juneau] roaded service area, which include a number of projects that benefit [Juneau] generally and/or provide no direct benefits to the Cruise Lines' vessels and passengers;
>
> (c)  $2 million for ... bus services even though individual passengers, including Cruise Lines passengers using [the] bus services, already pay to use [the] bus services;
>
> (d)  $594,000 for operations, maintenance, capital improvements, and expansions of the Juneau International Airport;
>
> (e)  $447,000 for upgrades to a private dock that Cruise Lines' vessels and passengers are not able to use; and

---

[18]Id.

[19]Id. at ¶ 27.

    (f) Attorneys' fees for outside counsel engaged to represent [Juneau] in matters related to this litigation.[20]

Based on these allegations, plaintiffs assert four claims for relief: 1) a claim that the Entry Fees violate the Tonnage Clause of the United States Constitution; 2) a claim that the Entry Fees violate the Rivers and Harbors Appropriation Act of 1884, as amended, 33 U.S.C. § 5; 3) a claim that the Entry Fees violate the Commerce Clause of the United States Constitution; and 4) a § 1983 equal protection claim. Plaintiffs seek a declaration 1) that the Entry Fees "violate the Tonnage Clause, the Supremacy Clause (by virtue of their violation of 33 U.S.C. § 5), and the Commerce Clause," 2) that "[d]efendants have deprived CLIA and its Cruise Lines members of federal rights under color of state law in violation of 42 U.S.C. § 1983;" 3) that "[d]efendants are legally barred from imposing or collecting the Entry Fees to the extent that revenues therefrom are unlawful, excessive or otherwise impermissible;" and 4) that "[d]efendants are legally barred from further use of Entry Fees revenue to fund activities that are unrelated to and do not benefit the Cruise Lines' vessels and passengers or that do not reflect the direct cost of providing services to cruise vessels."[21] Plaintiffs also seek to enjoin defendants 1) from "imposing or collecting the Entry Fees to the extent that the amount thereof is excessive or otherwise impermissible;" and 2) from "further use of the revenues from the Entry Fees to fund activities that are

---

[20]Id. at 7-8, ¶ 27.

[21]Id. at 14, ¶ 1(a)-(d).

unrelated to and do not benefit the Cruise Lines' vessels and passengers, or approximate their use of [Juneau's] port."[22]

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiffs' amended complaint on the ground that the Tax Injunction Act deprives the court of subject matter jurisdiction.

## Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendants are making a facial attack here. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. In considering a facial challenge, the court is generally confined to the allegations in the complaint and "assumes the truth of [the] plaintiff's factual allegations and draws all reasonable inferences in its favor." Ecological Rights Foundation v. Pacific Gas and Elec. Co., 803 F. Supp. 2d 1056, 1059 (N.D. Cal. 2011). But, the court may also consider "'additional facts ... contained in materials of which the court may take judicial notice'" without converting a facial attack into a factual attack. Id. (quoting Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)). Plaintiff bears the burden of proving that subject matter jurisdiction exists. Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009)).

---

[22]Id. at ¶ 2(a)-(b).

Defendants argue that the Tax Injunction Act (TIA) deprives the court of subject matter jurisdiction of this case. "The TIA is a limitation on the jurisdiction of federal courts." Bidart Bros. v. Calif. Apple Com'n, 73 F.3d 925, 928 (9th Cir. 1996). The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[23] 28 U.S.C. § 1341. "[T]he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976). The TIA "bars both injunctive and declaratory relief." Air Polynesia, Inc. v. Freitas, 742 F.2d 546, 547 (9th Cir. 1984). In order for the TIA to divest the court of jurisdiction of plaintiffs' claims, the Entry Fees must be "taxes" for purposes of the TIA; an Alaska state court must provide plaintiffs with a plain, speedy and efficient means to challenge the imposition of the Entry Fees; and plaintiffs' action must, "if successful, ... reduce the flow of [Juneau's] tax revenue." Qwest Corp. v. City of Surprise, 434 F.3d 1176, 1184 (9th Cir. 2006).

The court "appl[ies] the Bidart test to determine whether a certain charge is a fee or a tax." Id. at 1183.

> The test instructs courts to focus on three primary factors: (1) the entity that imposes the charge; (2) the parties upon whom

---

[23]"It is well-settled that the statute applies not only to taxes imposed by states, but also to those imposed by municipalities." Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 n.6 (5th Cir. 1998).

>           the charge is imposed; and (3) whether the charge is expended
>           for general public purposes, or used for the regulation or
>           benefit of the parties upon whom the assessment is imposed.

Id.

The first Bidart factor suggests that the Entry Fees are taxes. "An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." Bidart, 73 F.3d at 931. Here, the challenged assessments were imposed by the municipal legislative governing body, not an administrative agency.

The second factor suggests that the Entry Fees are not taxes. An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." Id. The Entry Fees are imposed upon a narrow class composed of only large, out-of-state cruise ships. That the fees are actually paid by cruise ship passengers, which defendants contend each year number in the hundreds of thousands, does not mean that the fees are imposed on a broad class. What matters is that the Entry Fees are imposed only on large, out-of-state cruise ships and are not imposed on all citizens, all visitors to Juneau, or all vessels entering the Port of Juneau. See In re Washington State Apple Advertising Com'n, 257 F. Supp. 2d 1274, 1279 (E.D. Wash. 2003) (it is "relevant not that the assessments were imposed on only large apple producers as opposed to all apple producers, but that the assessments were imposed only on apple producers, and not on all citizens, or even all agricultural producers").

"Where" as here, "the first two factors are not dispositive, courts examining whether an assessment is a tax 'have tended ... to emphasize the revenue's ultimate use.'" Bidart, 73 F.3d at 932 (quoting San Juan Cellular Telephone Co. v. Public Service Com'n of Puerto Rico, 967 F.2d 683, 685 (1st Cir. 1992)). "Assessments treated as general revenues and paid into the state's general fund are taxes." Id. "An assessment placed in a special fund and used only for special purposes is less likely to be a tax." Id.

Here, there is no dispute that the Entry Fees were placed into special funds, which would tend to suggest that the Entry Fees are not taxes for purposes of the TIA. "However, even assessments that are segregated from general revenues are 'taxes' under the TIA if expended to provide 'a general benefit to the public.'" Id. (quoting San Juan Cellular, 967 F.2d at 685).

Defendants argue that plaintiffs have alleged that the Entry Fees were expended to provide a general benefit to the public. Defendants contend that the principal focus of plaintiffs' amended complaint is that the Entry Fees are being used for general purposes and not purposes related to large cruise ships and their passengers. Defendants emphasize that plaintiffs have alleged that the Entry Fees have been expended "on activities that are unrelated to and/or that have not provided any benefits to passengers and vessels", that the proceeds of the Entry Fees have been "applied ... to a variety of other projects and expenses that provide general benefits to the community", and that the cruise passengers

who pay the fee "have no interest in and derive no benefit from projects that [Juneau] may build or complete in the future."[24]

Plaintiffs do not dispute that they have alleged that the Entry Fees have been used for general purposes, but they argue that it is the intended "ultimate use" of the Entry Fees that governs here, not their allegations about defendants' misuse of the Entry Fees. And contrary to defendants' contention, the court may consider the intended use of the Entry Fees. See Hexom v. Oregon Dep't of Transp., 177 F.3d 1134, 1138 (9th Cir. 1999) (quoting Hager v. City of West Peoria, 84 F.3d 865, 870 (7th Cir. 1996)) ("[t]he question ... is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is. As the Seventh Circuit has pointed out, '[r]ather than a question solely of where the money goes, the issue is why the money is taken'").

Plaintiffs have alleged that the Entry Fees are levied "to fund capital improvements to port facilities" and "for capital projects said to be port-related."[25] The ordinance and the resolution which enacted the Entry Fees both provide that the fees were to be used for specific purposes and not for general purposes. The Marine Passenger Fee ordinance provides that the fees should be used "for services and infrastructure rendered to cruise

---

[24]First Amended Complaint [etc.] at 7-8, ¶¶ 26-28, Docket No. 28.

[25]Id. at 5, ¶¶ 15, 17.

ships and cruise ship passengers visiting" Juneau. CBJ Code 69.20.005.[26] The Port Development Fee Resolution provides that the fees "shall be used for capital improvements to the downtown waterfront for the provision of service[s] to the cruise ship industry."[27] Plainly, the Entry Fees were intended to be used for special purposes and to benefit the narrow class upon which they were imposed (large cruise ships and their passengers) and not the general public. That plaintiffs have alleged that the Entry Fees were <u>misused</u> to benefit the general public does not mean that the fees should be considered taxes for purposes of the TIA.

This case is similar to <u>Qwest Communications Corp. v. City of Berkeley</u>, 146 F. Supp. 2d 1081 (N.D. Cal. 2001). There, the plaintiff challenged a franchise fee imposed on telecommunications companies that used the defendant's public rights-of-way. <u>Id.</u> at 1088. The defendant "relie[d] on Qwest's own pleadings to argue that the Fee Schedule exacts taxes, not regulatory fees. It cites allegations made by Qwest that the fees exacted are classic franchise fees designed to generate general municipal revenues, and do not recover any actually incurred costs." <u>Id.</u> at 1092 (citation omitted). The court rejected the defendant's argument because "[t]hese allegations are included to demonstrate why the

---

[26] Exhibit 1 at 1, Opposition to Defendants' Motion to Dismiss Complaint, Docket No. 23.

[27] Resolution of the City and Borough of Juneau, Alaska Serial No. 2552 at Section 1(c)(4), Exhibit 2 at 2, Opposition to Defendants' Motion to Dismiss Complaint, Docket No. 23.

fees violate § 253(c) of the" Federal Telecommunications Act and instead the court looked "to the Fee Schedule itself, which gives ample description of the purpose and use for the fees." Id.

Similarly here, plaintiffs have included their allegations about how the fees were misused as factual support for their claims. Thus, rather than solely looking to plaintiffs' allegations to determine whether the Entry Fees are taxes, the court has looked to the legislation that enacted the Entry Fees, which provides that the fees are to be used for a specific purpose and not to benefit the general public.

As defendants point out, the Entry Fees were intended to, and do, raise revenue for Juneau rather than defray administrative expenses. But the Entry Fees were not intended to raise general revenue. Rather, the Entry Fees were placed in special funds and were intended to raise revenue to be used for purposes specifically related to large cruise ships and their passengers. That plaintiffs have alleged that the Entry Fees were misused and were actually used to benefit the general public does not change the fact that the ultimate use of the Entry Fees was intended to be only for the benefit of the narrow class on which the fees were imposed. Thus, the third Bidart factor suggests that the Entry Fees are not taxes.

In sum, two of the three Bidart factors weigh in favor of the Entry Fees not being considered taxes for purposes of the TIA. The court therefore concludes that the Entry Fees

are not taxes. Because the Entry Fees are not taxes,[28] the court is not divested of its subject matter jurisdiction pursuant to the TIA.

## Conclusion

Plaintiffs' motion to take judicial notice[29] is granted.

Defendants' motion to dismiss[30] is denied.

DATED at Anchorage, Alaska, this 29th day of September, 2016.

/s/ H. Russel Holland
United States District Judge

---

[28]Because the Entry Fees are not taxes, the court need not consider whether plaintiffs have a plain, speedy, and efficient remedy in state court or whether, if plaintiffs are successful, their action would reduce the flow of Juneau's tax revenue.

[29]Docket No. 24.

[30]Docket No. 18.