WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


CRUISE LINES INTERNATIONAL          )
ASSOCIATION ALASKA and CRUISE       )
LINES INTERNATIONAL ASSOCIATION,    )
                                    )
                        Plaintiffs, )
                                    )
        vs.                         )
                                    )
THE CITY AND BOROUGH OF JUNEAU,     )
ALASKA, a municipal corporation, and )
RORIE WATT, in his official capacity as )
City Manager,                       )
                                    )          No. 1:16-cv-0008-HRH
                        Defendants. )
_____)


O R D E R

Cross-motions for Summary Judgment;
Motion to Determine Law of the Case

        Plaintiffs move for summary judgment.[1]   In response, defendants move for a

determination of the law of the case on the Tonnage Clause and Rivers and Harbors Act.[2]

Defendants also oppose plaintiffs' motion for summary judgment and cross-move for

summary judgment.[3]   Defendants' motion for a determination of law is opposed[4] as is

---

[1]Docket No. 67.

[2]Docket No. 81.

[3]Docket Nos. 118 and 180-1.

[4]Docket No. 97.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                      - 1 -

defendants' cross-motion for summary judgment.[5]  Oral argument has been heard on the foregoing motions.  At oral argument, counsel agreed that the defendants' motion to determine the law of the case was purely a matter of law and should be taken up first.

Facts

Plaintiffs are Cruise Lines International Association Alaska (CLIA Alaska)[6] and Cruise Lines International Association (CLIA).  CLIA is a global organization that represents 51 cruise lines operating worldwide.  CLIA Alaska represented cruise lines that entered Alaska waters.  CLIA Alaska members included Carnival Cruise Lines, Crystal Cruises, Disney Cruise Lines, Holland America Line, Norwegian Cruise Line, Oceana Cruises, Princess Cruises, Regent Seven Sea Cruises, Royal Caribbean International, and Silverseas Cruises.

Defendants are The City and Borough of Juneau, Alaska (CBJ) and Rorie Watt, in his official capacity as the City Manager.  CBJ owns and operates the Cruise Ship Terminal and the Alaska Steam Ship Dock, which are two of the four cruise docks located in the downtown area of the City of Juneau.  The other two cruise ship docks, AJ Juneau Dock and Franklin Dock, are privately owned.  The Franklin Dock is owned by Princess Cruises.[7]  The AJ Juneau Dock is owned in part by Holland America.[8]  CBJ, which has approximately 32,000 year-round residents, receives approximately 1,000,000 cruise ship passengers each year from early May through mid-September.

---

[5]Docket No. 148.

[6]CLIA Alaska was dissolved in 2016.  Exhibit MD, Docket No. 176-2.  The regional group of CLIA that represents cruise lines which operate in Alaska is now called CLIA North West & Canada.  Exhibit MC, Docket No. 172-5.

[7]Exhibit IP, Docket No. 127-16.

[8]Exhibit BT at 1, Docket No. 120-20.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                          - 2 -

This case involves challenges to two passenger fees imposed by CBJ. First, the Marine Passenger Fee (MPF) is a $5-per-passenger fee assessed on any marine passenger ship, with some exceptions,[9] that enters any CBJ port. The MPF for each ship that enters any CBJ port is calculated based on the passenger manifest, and the owner or agent of the ship, not the individual passengers, is responsible for paying the MPF.[10] CBJ Code §§ 69.20.030 and 69.20.040.[11] The MPF was first imposed in 2000, at which time the stated purpose of the fee was

> to address the costs to the City and Borough for services and infrastructure usage by cruise ship passengers visiting Juneau, including emergency services, transportation impacts and recreation infrastructure use, and to mitigate impacts of increased utilization of City and Borough services by cruise ship passengers.[[12]]

In 2012, CBJ amended the "purpose and intent" portion of the MPF ordinance. The purpose of the MPF is now "to address the costs to the City and Borough for services and infrastructure rendered to cruise ships and cruise ship passengers visiting the City and Borough."[13] Revenue from the MPF is placed in the Marine Passenger Fund, and the proceeds of the Fund are:

> appropriated in support of the marine passenger ship industry including:

---

[9]Ships having accommodations for 20 or fewer passengers, ships without overnight berths, non-commercial ships, and government ships are excluded from paying the MPF.

[10]There is, however, no dispute that cruise lines incorporate this fee into the cost cruise passengers pay for their cruises.

[11]A copy of the MPF ordinance can be found at Exhibit 11, Docket No. 68-12.

[12]Exhibit 5 at 2, Docket No. 68-6.

[13]Exhibit 36 at 1, Docket No. 70-6.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                          - 3 -

(1)   Design, construction, enhancement, operation, or maintenance of capital improvements;

(2)   Operating funds for personnel, training, commodities, rentals, services and equipment for services provided, made available to, or required as a result of marine passenger ships and marine passengers;

(3)   Projects and programs that promote safety, environmental improvements[,] efficiency of interstate and international commerce, or enforcement of laws caused or required by marine passenger ships and marine passengers;

(4)   Acquisition of land required to execute the activities listed in this section;

(5)   Reserved; [and]

(6)   Surveys, analyses, polls, monitoring, and similar efforts to measure, describe or predict, or manage marine passengers, for items listed in subsection (a)(1)-(a)(4) of this section.

CBJ Code § 69.20.120.   In FY 2017, the revenue from the MPF was approximately $5 million.

CBJ allocates a portion of the revenue generated by the MPF to municipal government departments which perform functions "that are available for use by cruise ship passengers."[14] These departments have included Emergency Medical Services, Libraries, Police, Parks and Recreation, Streets, Finance, and the City Manager's Office.[15]   The allocated portion is transferred to the General Government Fund.  "The amount allocated is based on the number of hours cruise ship passengers spend in Juneau compared to the number of hours residents, independent visitors, conventioneers, and embarking/disembarking passengers spend in Juneau on an annual basis."[16]

---

[14]Exhibit 25 at 1, Docket No. 69-10.

[15]Id.

[16]Id.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                              - 4 -

Revenue from the MPF is also used to directly fund projects. Each year, the City Manager accepts proposals for projects to be funded by the MPF. CBJ Code § 69.20.120(b)(1). A draft list of proposals is prepared and put out for public comment as well as comment from the cruise line industry. CBJ Code § 69.20.120(b)(3). After comment and review by the finance committee, a final list is forwarded to the Assembly for approval. Id.

The direct funding includes projects and services that are provided by CBJ. By way of example, for FY 2015, CBJ used revenue from the MPF[17] for downtown foot/bike police patrols, downtown restroom cleaning, downtown sidewalk cleaning, Air Medevacs, EMS services, Docks and Harbors general operations and building maintenance, downtown pay phones, emergency room staff at the Bartlett Regional Hospital, and the city bus service.[18]

The direct funding also includes projects and services that are provided by third parties via operating grants. By way of example, for FY 2015, operating grants funded by revenue from the MPF were given to Tourism Best Management Practices,[19] SAIL - Accessible Training and Trip Coordination,[20] Airlift Northwest,[21] Franklin Dock

---

[17]Estimated MPF revenue for FY 2015 was $4,700,000. Exhibit 39 at 29, Docket No. 70-10.

[18]Id.

[19]The Tourism Best Management Practices "is a voluntary industry-managed program, designed to provide services to vessel passengers and address impacts, including safety issues, of tourism on local residents." Exhibit IG at 3, Docket No. 127-7.

[20]SAIL provides training "on communicating and serving customers with disabilities" and assists disabled visitors with accessing tours and other recreation opportunities. Exhibit IY at 2, Docket No. 127-25.

[21]"Airlift Northwest provides air ambulance service for visitors and residents of Juneau and the surrounding communities." Exhibit GH at 3, Docket No. 125-8.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                        - 5 -

Enterprises,[22] AJ Juneau Dock, LLC,[23] Goldbelt,[24] and the Juneau Convention and Visitors Bureau.[25]  Grant funds were also used to pay for the downtown crossing guards and the Downtown Security Program.[26]

Finally, revenue from the MPF is also used for capital projects.  By way of example for FY 2015, funds generated by the MPF were used for the Waterfront Seawalk,[27] electrical winches, real-time weather monitoring and communications, and Last Chance Basin Hydro-Geo.[28]

---

[22]This company owns one of the private cruise ship docks.  For FY15, Franklin Dock Enterprises requested funding for restroom cleaning and maintenance supplies, dock repair, security training, a bear-proof dumpster, and a total suspended solids monitoring system. Exhibit IE at 6, Docket No. 127-5.

[23]This company owns one of the private cruise ship docks.  For FY15, it requested MPF revenue for restroom cleaning and maintenance, operational expenses for a short-range response boat, port security training, covered walkway side panels, and bear-proof dumpster and garbage cans.  Exhibit IE at 5, Docket No. 127-5.

[24]Goldbelt operates the Seadrome Marina, which is located in downtown Juneau, and which caters to "boat based shore excursions, [the] small cruise ship market, and private yachts."  Exhibit 112 at 1, Docket No. 75-7.  MPF funds have been awarded to Goldbelt for replacement of the gangway, dock improvements, and construction of a guest staging area.

[25]Exhibit 39 at 29, Docket No. 70-10.

[26]This funding was for two uniformed security officers who do foot patrols in the downtown area during the cruise season.  Exhibit IE at 4, Docket No. 127-5.

[27]The Waterfront Seawalk project was part of CBJ's Long Range Waterfront Plan which was developed in 2004.  The Waterfront Seawalk "goes directly along the cruise ship docks, starting at the Franklin Dock and continuing along the CT and AS docks before connecting to the sidewalk.  The Seawalk picks up again at Gold Creek and continues to the whale statute."  Affidavit of Dncan Rorie Watt [etc.] at 16-17, ¶ 70, Docket No. 132.

[28]Exhibit 39 at 29, Docket No.70-10.  The Last Chance Basin project was designed to increase the capacity of water wells to "provide[] a predictable water supply to the cruise ships."  Exhibit IE at 7, Docket No. 127-5.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                        - 6 -

The second fee being challenged is the Port Development Fee (PDF), which is a $3.00 fee imposed on, with a few exceptions,[29] "vessels carrying passengers for compensation on port calls in the City and Borough. . . ."[30] Pursuant to Assembly resolutions, the PDF has been imposed by CBJ since at least 2002, although the amount of the fee has increased over time to the current $3.00. The owner or agent of the vessel is responsible for paying the PDF.[31] Funds generated by the PDF are intended to be used "for capital improvements to the downtown waterfront for the provision of service to the cruise ship industry" and any projects paid for with PDF funds are intended "to benefit all entities which remit the Fee."[32] In FY 2017, the PDF generated approximately $3 million in revenue. Since 2011, funds generated by the PDF have only been used for the 16B project[33] and the Seawalk project.[34]

Claims and Issues

A.    Plaintiffs' Claims/Issues

On April 13, 2016, plaintiffs commenced this action to challenge the MPF and PDF. In their first amended complaint, plaintiffs assert four causes of action. In their first cause of action, plaintiffs assert that the MPF and PDF violate the Tonnage Clause of the United

---

[29]Vessels under 200 tons, non-commercial vessels, government-owned vessels, and tribal-owned vessels are exempt from paying the PDF.

[30]Exhibit 16 at 2, Docket No. 69-1.

[31]Id. There is, however, no dispute that cruise lines incorporate this fee into the cost cruise passengers pay for their cruises.

[32]Id.

[33]The 16B project involved the construction of a new public dock and the reconstruction of the Alaska Steamship Wharf to accommodate larger cruise ships. Watt Affidavit at 7, ¶ 29, Docket No. 132. The cost of this project exceeded $54 million. CBJ incurred substantial bond indebtedness to plan, design, and build the 16B project. Id. at 7, ¶¶ 29, 33.

[34]Affidavit of Bob Bartholomew [etc.] at 6, ¶ 22, Docket No. 133.

States Constitution.  In their second cause of action, plaintiffs assert that the MPF and PDF violate the Rivers and Harbors Appropriation Act of 1899 (RHAA), as amended, 33 U.S.C. § 5.  In their third cause of action, plaintiffs assert that the MPF and PDF violate the Commerce Clause of the United States Constitution.  In their fourth cause of action, plaintiffs assert that the MPF and PDF violate the Supremacy Clause of the United States Constitution, and they allege that 42 U.S.C. § 1983 provides a basis for their Tonnage Clause and Commerce Clause claims.

Plaintiffs seek declaratory and injunctive relief.  Plaintiffs seek declarations that 1) the MPF and PDF violate the Tonnage Clause, the Supremacy Clause, and the Commerce Clause, 2) defendants have deprived plaintiffs of their federal rights in violation of § 1983, 3) "[d]efendants are legally barred from imposing or collecting" the MPF and PDF "to the extent that revenues therefrom are unlawful, excessive, or otherwise impermissible;" and 4) "[d]efendants are legally barred from further use of" the MPF and PDF "revenue to fund activities that are unrelated to and do not benefit the Cruise Lines' vessels and passengers or that do not reflect the direct cost of providing services to cruise vessels."[35]  Plaintiffs seek a permanent injunction prohibiting defendants from 1) "imposing or collecting the" MPF and PDF "to the extent that the amount thereof is excessive or otherwise impermissible;" and 2) "further use of the revenues from the" MPF and PDF "to fund activities that are unrelated to and do not benefit the Cruise Lines' vessels and passengers, or approximate their use of CBJ's port."[36]  Plaintiffs contend that many of CBJ's uses of the MPF and PDF revenue are unconstitutional or otherwise unlawful, including:

---

[35]First Amended Complaint for Declaratory and Injunctive Relief at 14, ¶ 1, Docket No. 14.

[36]Id. at ¶ 2.

revenues directed to general government operations; legal fees and costs (internal or external); infrastructure construction; maintenance, and improvements such as sidewalks, roadways, walkways, promenades; hospital costs; internet service and library upgrades; police and crossing guard costs; parks and beautification projects; and public transit.[37]

Plaintiffs now move for summary judgment on their first, second, and fourth causes of action and argue that it is not necessary for the court to address their third cause of action.

B.  Defendants' Claims/Issues

By their motion to determine the law of the case, defendants ask the court to determine:

1)  Whether the Tonnage Clause permits the use of fees for services that benefit vessel passengers and/or the vessel;

2)  Whether the Tonnage Clause permits the use of fees for services that benefit vessel passengers and/or the vessel even if those services may be available to and/or used by the general public;

3)  Whether the RHAA permits the use of fees for services that benefit vessel passengers and/or the vessel;

4)  Whether the RHAA permits the use of fees for services that benefit vessel passengers and/or the vessel even if those services may be available to and/or used by the general public.

Defendants also cross-move for summary judgment.  Defendants seek the dismissal of all of plaintiffs' causes of action, arguing that CBJ's use of MPF and PDF revenue has not been unconstitutional or unlawful.  In addition, defendants state the defenses of statute of limitations, failure to exhaust administrative remedies, waiver, estoppel and/or quasi-estoppel, and laches.

---

[37]Plaintiffs' Reply [etc.] at 2, n.3, Docket No. 148.

C.    Matters Not in Dispute

First, in plaintiffs' amended complaint and in their opening brief, plaintiffs seem to contend that the court should void the MPF ordinance and PDF resolution and enjoin CBJ from collecting the MPF and PDF altogether because the fees were unconstitutional and unlawful.  In their reply brief, plaintiffs acknowledge that the MPF ordinance and PDF resolution are not necessarily unconstitutional or unlawful on their face, but rather plaintiffs contend that some of CBJ's uses of the revenue generated by the MPF and PDF are unconstitutional or unlawful.  Plaintiffs contend that they are asking the court to enjoin CBJ from using future revenue from the MPF and PDF in an unconstitutional or unlawful manner.

Second, plaintiffs do not seek the refund of MPF or PDF paid to date.

Third, plaintiffs are associations of which cruise vessel owners are members.  Plaintiffs seek declaratory and injunctive relief for the benefit of their members.  Defendants concede that plaintiffs have standing to sue on behalf of their members for purposes of raising constitutional and statutory challenges to the MPF and PDF which are imposed upon association members' vessels calling at the Port of Juneau.  That is, defendants concede that plaintiffs have standing to bring their claims for declaratory and injunctive relief as presently pleaded.[38]

Discussion

A.    Motion to Determine the Law of the Case

In their motion to determine the law of the case, defendants first ask the court to determine whether the Tonnage Clause and the RHAA permit revenue from the MPF and PDF to be used for services that benefit vessel passengers, but do not benefit the vessel itself.  The court begins with the Tonnage Clause.

---

[38]Transcript of Oral Argument at 28:20-29:2 (Sept. 18, 2018), Docket No. 203.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                          - 10 -

The Tonnage Clause of the United States Constitution, Article I, Section 10, Clause 3, provides that:

> No State shall, without the Consent of Congress, lay any Duty of Tonnage. . . .

The Tonnage Clause "seeks to prevent states with 'convenient ports' from placing other States at an economic disadvantage by laying levies that would 'ta[x] the consumption of their neighbours.'" Polar Tankers, Inc. v. City of Valdez, Alaska, 557 U.S. 1, 7 (2009) (quoting 3 Records of the Federal Convention of 1787, pp. 542, 519 (M. Farrand rev. 1966)). The "'prohibition against tonnage duties has been deemed to embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port.'" Id. at 8 (quoting Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n, 296 U.S. 261, 265-266 (1935)). "Although the Clause forbids all charges, whatever their form, that impose 'a charge for the privilege of entering, trading in, or lying in a port, nothing in the history of the adoption of the Clause, the purpose of the Clause, or th[e Supreme] Court's interpretation of the Clause suggests that it operates as a ban on any and all taxes which fall on vessels that use a State's port, harbor, or other waterways." Id. at 9 (citations and emphasis omitted).

Plaintiffs acknowledge that the Tonnage Clause does not preclude fees imposed for services provided to a vessel entering a port, such as charges for regulation of harbor traffic, pilotage, wharfage, use of locks, medical inspections of vessels, or emergency services for vessels. "Charges for such services, even those that vary according to tonnage, are constitutional for at least two reasons. First, they are not taxes—which are assertions of sovereignty—but are instead demands for reasonable compensation—which are assertions of a right of property." Maher Terminals, LLC v. Port Authority of New York and New

Jersey, 805 F.3d 98, 107 (3rd Cir. 2015) (citing Packet Co. v. Keokuk, 95 U.S. 80, 85 (1877)).  "Second, charges for services are constitutional because they facilitate, rather than impede, commerce."  Id. (citing Clyde Mallory Lines, 296 U.S. at 265–66).  But, a state or local government "may not escape the Tonnage Clause's reach merely by labeling a [fee] as a charge for services."  Id.  "Fees for service can still violate the Tonnage Clause if they have 'a general, revenue-raising purpose.'"  Lil' Man In The Boat, Inc. v. City and County of San Francisco, Case No. 17-cv-00904-JST, 2017 WL 3129913, at *4 (N.D. Cal. July 24, 2017) (quoting Polar Tankers, 557 U.S. at 10).  "In other words, where a fee is used 'for projects which do not and could not benefit' those paying the fee, the fee is unconstitutional."  Id. (quoting Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., 567 F.3d 79, 82–83 (2d Cir. 2009)).

Case law over the past 150 years, most of it from the United States Supreme Court, unequivocally supports the proposition that, in order for a fee imposed upon a vessel to be permissible under the Tonnage Clause, it must be compensation for a service rendered to the vessel itself.  Thus, Keokuk Northern Line Packet Co. v. City of Keokuk, 95 U.S. 80 (1877), holds that a city may impose and collect wharfage from vessel owners which moor at city-constructed wharves.  See also Northwestern Union Packet Co. v. City of St. Louis, 100 U.S. 423, 429 (1879) (wharfage fees constitutional because they were "paid as compensation for the use of an improved wharf and not for the mere privilege of entering or stopping at the Port of St. Louis or for landing at the shore, in its natural condition, where there were no conveniences which could be called a wharf"); Cincinnati P.B.S.&P. Packet Co. v. Catlettsburg, 105 U.S. 559, 562 (1881) ("[n]or is there any room to question the right of a city or town situated on navigable waters to build and own a wharf suitable for vessels to land at and to exact a reasonable compensation for the facilities thus afforded to vessels by

the use of such wharves"); Huse v. Glover, 119 U.S. 543, 548 (1886) ("[t]he exaction of tolls for passage through the locks is as compensation for the use of artificial facilities constructed[,] . . . like charges for the use of wharves and docks constructed to facilitate the landing of persons and freight, and the taking them on board, or for the repair of vessels").

In Southern S.S. Co. of New Orleans v. Port Wardens, 73 U.S. 31 (1867), the United States Supreme Court evaluated and struck down a fee imposed on every ship entering the Port of New Orleans, regardless of whether the ship was rendered a service of any kind while in port. The Court compared this fee to fees for pilotage and half-pilotage fees which the Court had found to not run afoul of the Tonnage Clause. The Court explained:

> Pilotage is a compensation for services performed, half-pilotage is compensation for services which the pilot has put himself in readiness to perform by labor, risk, and costs and which he has actually offered to perform. But in the case before us there were no services and no offer to perform any.

Id. at 34. This case stands for the proposition that the mere availability of a service does not run afoul of the Tonnage Clause if the availability of that service is of benefit to a vessel. There is no requirement that fees imposed upon vessels have a physical impact upon the vessel. But a fee imposed "not for services provided to the vessel" is unconstitutional because such fees are deemed "designed to raise revenue used for general municipal service." Polar Tankers, 557 U.S. at 8, 10 (Valdez' personal property tax held unconstitutional because it was "not for services provided to the vessel").

In Morgan's Louisiana & T. R. & S. S. Co. v. Board of Health of State of Louisiana, 118 U.S. 455., 460 (1886), the fee being challenged was a fee that vessels were required to pay, as part of Louisiana's quarantine system, to be "examined at the quarantine station, with respect to their sanitary condition and that of their passengers[.]" The Court found that the fee did not violate the Tonnage Clause because it was "compensation for a service rendered,

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                          - 13 -

as part of the quarantine system of all countries, to the vessel which receives the certificate that declares it free from further quarantine requirements." Id. The fee in question also provided some benefit to vessel passengers as the funds generated by the fee were used "for [the] care and treatment of diseased passengers, and for the comfort of their companions[.]" Id. at 460. But the fee was primarily compensation for a service rendered to the vessel itself and any benefit provided to passengers was incidental.

Summarizing the foregoing, the Tonnage Clause does not prohibit the imposition and expenditure of fees imposed upon a vessel that reflect the costs of services provided to a vessel or for services which, if called upon by a vessel, would further the marine enterprise. Tonnage Clause case law focuses exclusively upon the permissibility of fees for services rendered to a vessel. No case law supports the proposition that fees imposed upon vessels but expended for services that benefit vessel passengers only would be constitutional under the Tonnage Clause.

The same is true of the RHAA. The RHAA was amended in 2002 to include what is now codified as 33 U.S.C. § 5(b). Section 5(b) of the RHAA provides that:

> [n]o taxes, tolls, operating charges, fees, or any other imposi-
> tions whatever shall be levied upon or collected from any vessel
> or other water craft, or from its passengers or crew, by any
> non-Federal interest, if the vessel or water craft is operating on
> any navigable waters[39] subject to the authority of the United
> States, or under the right to freedom of navigation on those
> waters, except for
>
> (1) fees charged under section 2236 of this title;
>
> (2) reasonable fees charged on a fair and equitable basis that –

---

[39]The cruise ships that are being assessed the MPF and PDF dock in Gastineau Channel, which is navigable water. See Approved Jurisdictional Determination Form, Exhibit 76 at 1, Docket No. 73-1 ("Gastineau Channel qualifies as navigable water of the United States" for purposes of the RHAA "because it is a water body subject to the ebb and flow of the tide").

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                    - 14 -

(A) are used solely to pay the cost of a service to the vessel or water craft;

(B) enhance the safety and efficiency of interstate and foreign commerce; and

(C) do not impose more than a small burden on interstate or foreign commerce; or

(3) property taxes on vessels or watercraft, other than vessels or watercraft that are primarily engaged in foreign commerce if those taxes are permissible under the United States Constitution.

The foregoing "codified the common law concerning the [] constitutional provisions" of the Commerce and Tonnage Clauses of the United States Constitution. State, Dep't of Natural Resources v. Alaska Riverways, Inc., 232 P.3d 1203, 1222 (Alaska 2010). "33 U.S.C. § 5(b), like the Commerce and Tonnage Clauses, prohibits levying fees on the use of navigable waters unless those fees do not impose a significant burden on interstate commerce and represent a fair approximation of the benefit conferred or cost incurred by the charging authority." Id.; see also, Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Auth., 566 F. Supp. 2d 81, 102 (D. Conn. 2008) ("[t]he language of the requirements" in Section 5(b) "closely tracks the Commerce Clause and Tonnage Clause cases . . . in its focus on reasonable fees used to cover the cost of service to vessels"). "The U.S. House Conference Report state[d] that the purpose of 33 U.S.C. § 5(b) was 'to clarify existing law with respect to Constitutionally permitted fees and taxes on a vessel,' and 'to prohibit fees and taxes on a vessel simply because that vessel sails through a given jurisdiction.'" Reel Hooker Sportfishing, Inc. v. State, Dep't of Taxation, 236 P.3d 1230, 1235 (Haw. Ct. App. 2010) (quoting H.R. Rep. No. 108–334, at 180 (2002) (Conf. Rep.)).

In codifying the common law developed under the Tonnage Clause, Congress unambiguously provided that entities such as CBJ may not impose fees on vessels operating

in navigable waters of the United States or upon the passengers or crew of such vessels, unless such fees were reasonable and used to pay "the cost of a service to the vessel." Section 5(b) creates no exception for services beneficial only to passengers of a vessel.

Secondly, in their motion for determination of the law of the case, defendants ask the court to determine whether the Tonnage Clause and the RHAA permit revenue from the MPF and PDF to be used for services that benefit passengers and/or vessels but also benefit the general public. Whether a particular service is available to and/or used by the general public is not relevant under either the Tonnage Clause or Section 5(b). Services that constitute a service to a vessel do not become unconstitutional or unlawful because of incidental/parallel use by the general public.

Based on the foregoing, defendants' motion to determine the law of the case is granted in part and denied in part. The motion is denied as to defendants' contention that the Tonnage Clause and Section 5(b) of the RHAA permit the use of fees for services that only benefit passengers. In order for fees to be permissible under the Tonnage Clause and the RHAA, the fees must be used for services rendered to a vessel itself. The motion is granted as to defendants' contention that fees that are otherwise permissible do not become impermissible simply because the services being provided may also benefit the general public.

B.    Cross-Motions for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                    - 16 -

is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views the evidence of the non-movant

in the light most favorable to that party, and all justifiable inferences are also to be drawn in

its favor.  Id. at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific

facts' set forth by the nonmoving party, coupled with undisputed background or contextual

facts, are such that a rational or reasonable jury might return a verdict in its favor based on

that evidence."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,

631 (9th Cir. 1987).  "[W]hen parties submit cross-motions for summary judgment, [t]he

court must rule on each party's motion on an individual and separate basis, determining, for

each side, whether a judgment may be entered in accordance with the Rule 56 standard."

Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th

Cir. 2001) (citations omitted).

                1.      private cause of action

Defendants argue that plaintiffs' second cause of action fails because there is no

private cause of action under the RHAA.  In California v. Sierra Club, 451 U.S. 287, 289

(1981), the Court considered whether "private parties may sue under the Rivers and Harbors

Appropriation Act of 1899 to enforce § 10 of that Act."  Section 10 of the Act "prohibits

[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable

capacity of any of the waters of the United States. . . .'"  Id. (quoting 33 U.S.C. § 403).  The

Court applied the four Cort factors to determine if Section 10 established a private cause of

action:

> "First, is the plaintiff one of the class for whose especial benefit the
> statute was enacted, . . . —that is, does the statute create a
> federal right in favor of the plaintiff?  Second, is there any
> indication of legislative intent, explicit or implicit, either to
> create such a remedy or to deny one? . . . Third, is it consistent

with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

Id. at 293 (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). As to the first factor, the Court found that "Section 10 of the Rivers and Harbors Appropriation Act is the kind of general ban which carries with it no implication of an intent to confer rights on a particular class of persons." Id. at 294. As to the second factor, the Court found that there was "nothing in the legislative history suggesting that § 10 was created for the especial benefit of a particular class." Id. Rather, the Court found that "the legislative history supports the view that the Act was designed to benefit the public at large by empowering the Federal Government to exercise its authority over interstate commerce with respect to obstructions on navigable rivers caused by bridges and similar structures." Id. at 294-95. Because the first two Cort factors plainly indicated that Congress did not intend to create a private cause of action, the Court did not consider the third and fourth factors. Id. at 298.

Defendants argue that the holding in California v. Sierra Club is not limited to Section 10 of the RHAA but applies to Section 5(b) as well. Defendants contend that there is nothing to indicate that Congress intended to create a private cause of action when it amended Section 5(b) in 2002.

No other court has actually analyzed this issue. In Bridgeport Port Authority, 566 F. Supp. 2d at 102-03, the court questioned "whether there is a private right of action under the statute" but did not resolve this question since it found that the ferry passenger fee at issue violated the Tonnage Clause. In Moscheo v. Polk County, Case No. E2008–01969–COA-R3–CV, 2009 WL 2868754, at *5 (Tenn. Ct. App. Sept. 2, 2009), the court observed that

"Polk County appears to be correct when it argues that 33 U.S.C. § 5(b) does not create a private cause of action[,]" but it provided no analysis.

California v. Sierra Club does not control the issue of whether there is a private cause of action under Section 5(b) of the RHAA because that case involved an entirely different section of the Act. More importantly, "[i]n later cases, the Supreme Court essentially collapsed the Cort test into a single focus: '[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.'" Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1170 (9th Cir. 2013) (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979)). "As with any case involving congressional intent, [the court] presume[s] that Congress expressed its intent through the statutory language it chose." Id. at 1171. The court "begin[s] [its] search for congressional intent with the language and structure of the statute, and then look[s] to legislative history only if the language is unclear, or if there is a clearly expressed contrary intention in the legislative history that may overcome the strong presumption that the statutory language represents congressional intent[.]" Id. (internal citations omitted).

Congress could not have intended to preclude a private cause of action under Section 5(b) of the RHAA because it was Congress' clear intent to mirror the federal common law of the Commerce Clause and the Tonnage Clause when it enacted Section 5(b). "When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 813 (1989). Because private plaintiffs have been able to enforce the prohibitions of the Tonnage Clause in courts, Congress must have intended that private plaintiffs would be able to enforce these same prohibitions under Section 5(b) of the RHAA.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                              - 19 -

The foregoing conclusion is reinforced by the fact that Section 5(b) was enacted for the benefit of vessels, and with respect to passengers and crews of vessels, as opposed to the general public. Section 5(b) expressly prohibits certain fees or taxes being imposed on vessels, crews, and passengers. For this additional reason, the court concludes that Congress intended that vessels (or associations representing vessels and their owners, such as plaintiffs here) could enforce Section 5(b). In short, Section 5(b) of the RHAA creates a private cause of action such as that asserted by plaintiffs in their second cause of action.

2.   statute of limitations

The first, third, and fourth causes of action of plaintiffs' complaint are founded upon the United States Constitution. These constitutional claims are before the court pursuant to 42 U.S.C. § 1983. Although plaintiffs only refer to § 1983 in connection with their fourth cause of action, the Ninth Circuit holds that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). Plaintiffs' causes of action based upon the Tonnage Clause, the Commerce Clause, and the Supremacy Clause are all § 1983 claims[40] and are subject to the statute of limitations which applies to such claims.

---

[40]There is some suggestion by defendants that plaintiffs' § 1983 claims against CBJ fail because plaintiffs cannot show that CBJ is acting pursuant to an official policy. To prevail on a § 1983 claim against a municipality, "a plaintiff must show: (1) that he was 'deprived of [his] constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount to deliberate indifference to . . . constitutional rights; and (3) that these policies [were] the moving force behind the constitutional violations.'" Gant v. County of Los Angeles, 772 F.3d 608, 617 (9th Cir. 2014) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 681-82 (9th Cir. 2001)). If CBJ has been using revenue from the MPF and PDF in impermissible ways, there can be no doubt that it has done so pursuant to an official policy which is expressed in the MPF ordinance and the PDF resolution.

Case 1:16-cv-00008-HRH   Document 207   Filed 12/06/18   Page 20 of 35

"[B]ecause there is no specified statute of limitations for an action under 42 U.S.C. § 1983, the federal courts look to the law of the state in which the cause of action arose and apply the state law of limitations governing an analogous cause of action." Pouncil v. Tilton, 704 F.3d 568, 573 (9th Cir. 2012). Defendants urge the court to apply Alaska's two-year tort statute of limitations, AS 09.10.070(a), which applies to actions based "upon a liability created by statute[.]" Defendants argue that means that any allegations as to the collection and expenditure of the MPF and PDF prior to April 16, 2014 are barred by the statute of limitations.

Assuming without deciding that a two-year statute of limitations applies to plaintiffs' constitutional claims, these claims are not barred by the statute of limitations because "continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." Virginia Hospital Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989) (citation omitted). Moreover, plaintiffs are only requesting prospective relief, so whether the court considers expenditures related to the MPF and PDF prior to April 16, 2014 is irrelevant. The question here is the proper expenditure of MPF and PDF revenue in the future. Plaintiffs' constitutional claims are not time barred.

Defendants also argue that plaintiffs' RHAA claim is barred by the statute of limitations. Defendants argue that the four-year limitation in 28 U.S.C. § 1658(a) would apply to plaintiffs' RHAA claim. The PDF was first levied in 2002 and became $3.00 in 2008. But, plaintiffs did not file the instant suit until April 13, 2016. Thus, defendants argue that plaintiffs are barred from bringing a claim that the PDF violates the RHAA. And although defendants do not expressly make the same argument as to the MPF, presumably the same statute of limitations would apply to plaintiffs' claim that the MPF violates the

RHAA and plaintiffs did not file the instant suit challenging the MPF within four years of that fee first being imposed.

Plaintiffs' RHAA claim is not time barred. "When a plaintiff alleges a continuing violation of the law, an overt act is required to restart the statute of limitations and the statute of limitations runs from the last overt act." Eichman v. Fotomat Corp., 880 F.2d 149, 160 (9th Cir. 1989). Each year the CBJ Assembly approves the expenditures of the MPF and PDF revenue, so each yearly decision constitutes an overt act and restarts the statute of limitations.

### 3.    exhaustion of administrative remedies

Defendants argue that they are entitled to dismissal of plaintiffs' claim that the MPF is unconstitutional because plaintiffs failed to exhaust their administrative remedies. "To determine if a complaint should be dismissed for failure to exhaust administrative remedies, a court must decide whether (a) exhaustion of remedies was required; (b) the [plaintiff] exhausted those remedies; and (c) the failure to exhaust remedies was excused." South Peninsula Hospital v. Xerox State Healthcare LLC, 223 F. Supp. 3d 929, 936 (D. Alaska 2016) (citation omitted). "In general, exhaustion is required if a statute or regulation provides for administrative review. If, however, a court finds no effective remedy is available, it will generally be an abuse of discretion to require exhaustion of remedies." Id. (citation omitted).

CBJ Code § 69.20.100 provides:

> An owner or agent who protests the payment of the fees charged under this chapter shall pay the fees and shall, within the time set for payment of the fees, provide the manager with a written statement of protest specifying the amount of the fees paid and the basis for the protest. The manager's decision shall be final and any appeal thereof shall be to the superior court.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                          - 22 -

Defendants argue that there is no dispute that plaintiffs did not avail themselves of this administrative remedy. Defendants further argue that there is no excuse for plaintiffs' failure to avail themselves of this administrative remedy. Defendants argue that plaintiffs cannot contend that the procedure provided is inadequate particularly since the procedure allows for appeal to the superior court, a court that has jurisdiction to hear constitutional claims. Defendants also argue that plaintiffs cannot claim that the procedure would have been futile or that it was unreasonable.

Plaintiffs' MPF claims are "outside the reach of the administrative review process. . . ." South Peninsula Hospital, 223 F. Supp. 3d at 937. The procedures in CBJ Code § 69.20.100 provide a mechanism for a fee payer to protest the amount of a specific assessment and obtain a refund for an improperly calculated fee. But, plaintiffs' MPF claims have nothing to do with improperly calculated fees but rather are claims for prospective relief based on allegations that the MPF violates the Tonnage Clause and the RHAA. There is no administrative remedy that plaintiffs have failed to exhaust as a predicate to bringing this action.

### 4. waiver

Defendants argue that plaintiffs have waived any right to assert that the MPF and PDF violate the Tonnage Clause. "A waiver occurs when 'a party intentionally relinquishes a right' or 'when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" Salyers v. Metropolitan Life Ins. Co., 871 F.3d 934, 938 (9th Cir. 2017) (quoting Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991)). "The general rule is that '[c]onstitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent.'" Schell v.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                              - 23 -

Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (quoting Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997)). "Whether a waiver of constitutional rights was made knowingly and voluntarily is a mixed question of law and fact. . . ." Kirkpatrick v. Chappell, 872 F.3d 1047, 1055 (9th Cir. 2017) (quoting Moran v. Godinez, 57 F.3d 690, 698 (9th Cir. 1994)).

The parties disagree as to whether plaintiffs (or a predecessor association) did or did not knowingly and voluntarily waive any rights they had to challenge the MPF and PDF. The parties disagree as to the authority of various representatives of vessel owners or of the associations to consent to or waive the collection of fees imposed upon plaintiffs' members' vessels. The court need not resolve this dispute because no reasonable fact-finder could find that plaintiffs or their members knowingly and voluntarily waived for all time in the future any possible constitutional or legal challenge to the MPF and PDF.

If plaintiffs were seeking to obtain a refund of fees paid by vessel owners in the past, defendants' waiver argument might have some validity. But plaintiffs are not seeking refunds, and requests by plaintiffs or their members for services and/or concurrences in the providing of services in the past do not evidence a knowing and voluntary waiver of a prospective constitutional or legal challenge to the MPF ordinance or the PDF resolution.

     5.    laches

Defendants argue that laches prevents plaintiffs from pursuing claims that the MPF and PDF violate the Tonnage Clause. "The affirmative defense of laches 'is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them.'" Eat Right Foods Ltd. v. Whole Foods Market, Inc., 880 F.3d 1109, 1115 (9th Cir. 2018) (quoting Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 997 (9th Cir. 2006)). "To establish that laches bars a claim, a defendant must 'prove both an unreasonable delay by the plaintiff and prejudice to itself.'" Id. (quoting Evergreen

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case       - 24 -

Safety Council v. RSA Network Inc., 697 F.3d 1221, 1226 (9th Cir. 2012)). "'[E]ven constitutional rights can be waived if not timely asserted.'" Fox v. Johnson, 832 F.3d 978, 989 (9th Cir. 2016) (quoting Hill v. Blind Indus. & Servs. of Md., 179 F.3d 754, 758 (9th Cir. 1999)).

Defendants must first show that plaintiffs have unreasonably delayed in bringing their challenges to the MPF and PDF. There is no question that plaintiffs delayed in bringing their constitutional challenges as to the MPF and PDF fees paid in the past. This delay was unreasonable, given that CBJ has been expending the revenue from the MPF and PDF for years for some of the projects to which plaintiffs are now objecting.

But plaintiffs are not seeking refunds of fees which were paid in the past. The relief that plaintiffs are seeking is forward-looking and has to do with MPF and PDF funds not yet collected or expended. "[L]aches typically does not bar prospective injunctive relief." Danjaq LLC v. Sony Corp., 263 F.3d 942, 959 (9th Cir. 2001). "[T]he general rule that laches does not bar future injunctive relief stems from a practical recognition of the interaction between the temporal components of those two doctrines. Laches stems from prejudice to the defendant occasioned by the plaintiff's past delay, but almost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm." Id. at 959-960.

Although laches may apply in "special case[s]" seeking prospective injunctive relief, id. at 960, this is not a special case. The 16B project is the only evidence of possible future prejudice to defendants, and plaintiffs unequivocally conceded at oral argument[41] that defendants may constitutionally and lawfully use PDF revenue in the future to pay for the 16B project. There is no future prejudice to defendants because they have an entirely free

[41]Transcript of Oral Argument at 11:15-22 (Sept. 18, 2018), Docket No. 203.

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                          - 25 -

hand in determining what projects to propose in the future and how those projects should be funded.

The parties' cross-motions for summary judgment have not presented a genuine dispute of material fact as regards defendants' laches defense. Plaintiffs delayed for years in bringing their constitutional challenge to the MPF and PDF expenditures, and that delay was unreasonable in light of the fact that defendants were using MPF and PDF fees for years for some of the projects to which plaintiffs are now objecting. But defendants' affirmative defense of laches, like their waiver defense, is unavailing in light of the fact that plaintiffs are not seeking a refund of fees previously collected.

6. equitable estoppel

Defendants argue that plaintiffs should be equitably estopped from challenging the MPF and PDF.

> To demonstrate that equitable estoppel is warranted, a party must show:
>
> "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct."

United States v. Kim, 806 F.3d 1161, 1168 (9th Cir. 2015) (quoting United States v. Hemmen, 51 F.3d 883, 892 (9th Cir. 1995)). "'Equitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from the undisputed facts.'" Kendall v. Amer. Hawaii Cruises, 704 F. Supp. 1010, 1018 (D. Haw. 1989) (quoting Shamrock Development Co. v. City of Concord, 656 F.2d 1380, 1386 (9th Cir. 1981)).

Defendants argue that plaintiffs asserted that they supported the PDF and then followed that assertion by not challenging the PDF for eight years. Defendants argue that

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                      - 26 -

CBJ relied on that assertion by planning and developing numerous infrastructure improve-ments, including the 16B project. Defendants argue that CBJ would not have undertaken these projects if they had known that plaintiffs were going to challenge the PDF at some point down the road. But, this argument fails for the same reason as defendants' laches argument fails, namely that the 16B project is irrelevant to this case.

As for the MPF, defendants argue that CBJ has relied on the fact that plaintiffs' members specifically agreed to expenditures or requested expenditures, with no knowledge that plaintiffs might someday dispute how CBJ was using the MPF revenue. Defendants argue that it cannot possibly be equitable for plaintiffs' members to request expenditures from the MPF funds and then for plaintiffs to later file a lawsuit alleging that those very expenditures are unconstitutional.

This argument fails because there is nothing inequitable about receiving the benefits of a statute or ordinance and then later challenging the constitutionality of that statute or ordinance. See Louisville & N. R. Co. v. Bass, 328 F. Supp. 732, 741 (D.C. Ky. 1971) (rejecting argument that the defendants were estopped from challenging the constitutionality of a statute because they had accepted "the monetary benefits" of the statute). Moreover, as has been repeatedly stated herein, plaintiffs are only seeking prospective relief, which makes their failure to object in the past to certain projects irrelevant to the issue of whether defendants can expend MPF and PDF funds on those projects in the future.

   7. quasi-estoppel

Defendants argue that quasi-estoppel should apply to plaintiffs' claims that the MPF and PDF are unconstitutional. "Quasi-estoppel applies where it would be unconscionable to allow a party to assert inconsistent positions." In re Quintana, 915 F.2d 513, 518 (9th Cir. 1990); see also, In re Kritt, 190 B.R. 382, 388 (9th Cir. BAP 1995) (citation omitted) ("quasi

estoppel[] forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects").  In determining whether quasi-estoppel applies, the court considers the following factors:

> "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts."

TKC Aerospace, Inc. v. Muhs, Case No. 3:11–cv–0189–HRH, 2015 WL 6394481, at *5 (D. Alaska Oct. 22, 2015) (quoting Wright v. State, 824 P.2d 718, 721 (Alaska 1992)).

Defendants argue that plaintiffs are now taking an inconsistent position because plaintiffs originally supported the PDF but are now claiming that only fees that are used to provide services to the physical vessel itself are constitutional.  Defendants argue that this inconsistency is significant because over the last eight years, plaintiffs' members have made a substantial amount of money by bringing their cruise ships to Juneau and using the infrastructure created in part with revenue generated by the PDF.  Defendants argue that for plaintiffs to now change their position is unconscionable.  As for the MPF, defendants argue that it is unconscionable for plaintiffs to now argue that the MPF is unconstitutional when plaintiffs' members have been requesting and using MPF funds for years.

Plaintiffs are indeed taking a different position than they have sometimes taken concerning expenditures from the PDF and MPF.  Plaintiffs' members operate profitable tourist businesses, and the Juneau tourist business is also extremely beneficial to the City and Borough of Juneau.  But the fact that both parties benefit from tourism is irrelevant to the question of whether or not the doctrine of quasi-estoppel applies in this case.  It is true that plaintiffs' members have accepted benefits in the sense that their money has been collected

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                                 - 28 -

by defendants and then expended for projects or services, some of which plaintiffs' members have requested. It would indeed bother the conscience of the court were plaintiffs' members to accept the benefit of projects or services which they requested and then challenge defendants for providing those projects or services by seeking a refund. But plaintiffs are not seeking a refund of any fees collected from their members. Again, the relief that plaintiffs are seeking here is forward-looking. At present, plaintiffs have taken no position and have gained no advantage – nor have they caused any disadvantage – with respect to future expenditures of revenue generated by the MPF and PDF. There is nothing unconscionable about plaintiffs asserting their constitutional and statutory rights as to the future use of fees collected from plaintiffs' members. Defendants' affirmative defense of quasi-estoppel fails.

        9.    <u>merits</u>

The constitutional and statutory issues raised by the parties' cross-motions for summary judgment are purely legal issues. There are no fact disputes to be resolved at this time because plaintiffs do not seek the refund of fees previously imposed and collected by CBJ. Although presently the court is not in a position to evaluate the constitutionality or lawfulness of PDF or MPF funded services or projects which defendants may offer in the future, the case is ripe for declarations of law applicable to plaintiffs' first and second causes of action and the constitutionality of the MPF ordinance and the PDF resolution in light of the Supremacy Clause of the United States Constitution (plaintiffs' fourth cause of action).

The court begins with the issues raised in defendants' cross-motion for summary judgment. Defendants first ask the court whether the Tonnage Clause permits the use of fees for services that benefit vessel passengers and/or the vessel. Applying the legal authorities set out above, the use of MPF and PDF fees for services which defendants provide to vessels

is permissible. The Tonnage Clause is not violated by defendants' spending of MPF and PDF funds for those endeavors that facilitate the marine operations of plaintiffs' members' vessels. Such endeavors constitute services to a vessel. Expenditure of MPF and PDF fees for the benefit of passengers violates the Tonnage Clause unless those expenditures constitute a service to the vessel. For example, the supply and maintenance of equipment by defendants which is used by passengers for purposes of embarking or disembarking a vessel plainly benefits passengers. However, the expenditure of MPF and PDF funds for that type of service does not offend the Tonnage Clause because boarding and disembarking from a vessel plainly constitutes a service to the vessel as well. But expenditures of MPF and PDF funds for services to passengers only – such as crossing guards, repair and maintenance of sidewalks – violate the Tonnage Clause because they do not constitute a service to a vessel. There is no nexus to the marine operations of a vessel.

Put somewhat differently, the question which plaintiffs' first cause of action puts before the court is not whether CBJ's use of MPF and PDF funds benefits passengers. Passenger benefits are not relevant. The proper question as to each category of expenditure by defendants is: Does the expenditure provide a service to a vessel? If the answer is yes, the expenditure is constitutional. If the answer is no, the expenditure is unconstitutional under the Tonnage Clause.

The second issue raised in defendants' cross-motion for summary judgment also concerns plaintiffs' first cause of action. Defendants ask whether the Tonnage Clause permits the use of fees for services that benefit the passengers or a vessel, even if those services may be available to and/or used by the general public. As discussed above, expenditure of MPF and PDF fees for services that benefit a vessel (that facilitate marine operations) are constitutional, whereas those expenditures that do not benefit a vessel are

unconstitutional. Whether a particular service provided by defendants is available to and/or used by the general public is not relevant to plaintiffs' Tonnage Clause claim. Providing facilities that constitute a service to a vessel do not become unconstitutional because of incidental/parallel use by the general public. That said, services provided by defendants to passengers which are of like kind to those services generally provided by municipalities and generally funded by municipal tax revenues are unlikely to qualify as services to a vessel. Whereas a gangplank used by passengers and the general public is a service to a vessel, sidewalk repairs and access to the public library's internet, which passengers share with the general public, are unlikely to be a service to a vessel.

The third issue raised by defendants in their cross-motion for summary judgment concerns plaintiffs' second cause of action. Defendants ask whether the RHAA limits the use of fees to those services only provided to a vessel, or if fees may properly be used for services benefitting only vessel passengers. As discussed above, the RHAA expressly limits the use of fees imposed upon a vessel or its passengers to services provided to the vessel. A service which is provided by defendants and is beneficial to a vessel does not become unlawful under the RHAA because passengers, in addition to the vessel, may benefit from the expenditure. But using fees imposed on a vessel for services which benefit passengers, but which do not also benefit the vessel, is unlawful.

Finally, defendants ask with respect to plaintiffs' second cause of action whether the RHAA limits the use of fees to services to the passengers and the vessel to the exclusion of use or availability of use by the public. Again, the critical inquiry is whether or not a service provided by defendants and paid for with MPF or PDF funds constitutes a service to a vessel. Whether a service to a vessel incidentally benefits passengers or is used by passengers as well as the general public does not matter. Services provided by defendants, funded by MPF

or PDF fees, which benefit passengers, or passengers and the general public, are unlawful under the RHAA unless those expenditures are shown to be a service to a vessel.

In the end, defendants argue that they are entitled to summary judgment on plaintiffs' first and second causes of action because their use of MPF and PDF revenue for services to passengers is constitutional and lawful. Defendants' cross-motion is denied as to the plaintiffs' first and second causes of action for the reason that fees imposed by defendants upon vessels and used for services to passengers are unconstitutional and unlawful unless the services in question constitute a service to a vessel.

Defendants also seek summary judgment on plaintiffs' third cause of action based upon the Commerce Clause. Defendants' cross-motion for summary judgment on plaintiffs' Commerce Clause cause of action is denied. Fees imposed and collected for services to passengers that do not also benefit the vessel may violate the Commerce Clause because fees for such services likely unduly burden interstate commerce.

Finally, defendants seek summary judgment on plaintiffs' Supremacy Clause cause of action. "It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712–13 (1985) (quoting Gibbons v. Ogden, 9 Wheat. 1, 9 (1824)). "'The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.'" Berezovsky v. Moniz, 869 F.3d 923, 930 (9th Cir. 2017) (quoting Gonzales v. Raich, 545 U.S. 1, 29 (2005)). "Preemption arises when 'compliance with both federal and state regulations is a physical impossibility, or . . . state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Bank of Am. v. City & Cty. of S.F., 309 F.3d 551, 558 (9th Cir. 2002)).

Order – Cross-Motions for Summary Judgment;
Motion to Determine Law of the Case                                                                                                  - 32 -

Plaintiffs argue that the RHAA preempts the MPF ordinance and the PDF resolution. But, this argument fails. The MPF ordinance and PDF resolution are not preempted by the Supremacy Clause. It is not impossible for vessel owners to comply with both the federal law and the local law. Because some of the uses of the MPF and PDF revenue is permissible under the RHAA, the local laws do not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Berezovsky, 869 F.3d at 930 (citation omitted). Defendants' cross-motion as to plaintiffs' Supremacy Clause claim is granted.

Turning then to plaintiffs' motion for summary judgment, plaintiffs seek a declaration that the MPF and PDF violate the Tonnage Clause of the United States Constitution (first cause of action) and Section 5(b) of the RHAA (second cause of action). The following rulings on plaintiffs' first and second causes of action are forward-looking. These rulings are based upon the court's determination of the law of the case as set forth above and the court's resolution of the substantive issues raised by defendants in their cross-motion for summary judgment. The court is not making factual determinations at this time. Moreover, the court does not presently have before it any claim or sufficient evidence upon which to make a determination as to the reasonableness of any costs of services which defendants supply to vessels.

The MPF ordinance and the PDF resolution do not impose a tax nor do they raise fees for general revenue purposes. Rather, defendants' MPF ordinance and PDF resolution impose fees for proposed services. On their face, the MPF ordinance and the PDF resolution do not impose unconstitutional or unlawful fees for entry into the Port of Juneau. Based upon the MPF ordinance and the PDF resolution, defendants may, constitutionally and lawfully, impose and collect fees to pay the reasonable costs of services rendered to a vessel.

But, MPF and PDF funds may not be expended for services benefitting passengers which do not also constitute a service to a vessel – that is, a service which advances the interstate marine enterprise of the vessel. Expenditures of fees imposed upon vessels which enhance the tourist experience of passengers brought to Juneau by plaintiffs' members' vessels do not qualify as a service to a vessel, even though the enhancement of passengers' experience at Juneau may benefit plaintiffs' members financially. What is critical is that there be a service to a vessel.

Based on the foregoing, plaintiffs' motion for summary judgment on their first and second causes of action is granted in part and denied in part. Under both the Tonnage Clause of the United States Constitution and Section 5(b) of the Rivers and Harbors Appropriation Act, imposing reasonable fees for the cost of services provided to vessels engaged in interstate marine commerce is constitutional and lawful. Imposition of such fees which do not constitute a service to a vessel is unconstitutional and unlawful. Plaintiffs' motion for judgment on their first and second causes of action is granted to the extent that the MPF ordinance and the PDF resolution impose fees that are used to fund services that are not services rendered to a vessel. The motion is otherwise denied.

Plaintiffs' motion for summary judgment as to plaintiffs' fourth cause of action is denied. As set out above, the MPF ordinance and the PDF resolution do not violate the Supremacy Clause of the United States Constitution.

<u>Conclusion</u>

Defendants' motion for determination of the law of the case is denied in part because, contrary to defendants' arguments, PDF and MPF funds may not be expended for services provided to passengers, if those services do not also benefit the vessel. Defendants' motion for determination of the law of the case is granted as to defendants' contention that the use

of PDF and MPF funds for services to vessels which also benefit the public does not render an otherwise permissible use of PDF and MPF funds unconstitutional or unlawful.

Plaintiffs' motion for summary judgment is granted in part and denied in part. The motion is granted as to plaintiffs' first and second causes of action to the extent that the MPF ordinance and the PDF resolution impose fees that are used to fund services that are not services rendered to a vessel. Plaintiffs' motion for summary judgment on their first and second causes of action is otherwise denied. Plaintiffs' motion for summary judgment on their fourth cause of action is also denied. Plaintiffs' argument that it is unnecessary for the court to decide their Commerce Clause claim is accepted, given the court's rulings as to plaintiffs' first and second causes of action. Plaintiffs' Commerce Clause claim in their third cause of action is dismissed without prejudice.

Defendants' cross-motion for summary judgment is denied as to plaintiffs' first and second causes of action because defendants' affirmative defenses fail and because fees imposed by defendants upon vessels and used for services to passengers are unconstitutional and unlawful unless the services in question constitute a service to a vessel. Defendants' cross-motion for summary judgment is granted as to the Supremacy Clause claim in plaintiffs' fourth cause of action. Plaintiffs' Supremacy Clause claim is dismissed with prejudice.

DATED at Anchorage, Alaska, this 6th day of December, 2018.

/s/ H. Russel Holland_____
United States District Judge